Bearoff, Appellant, v. Bearoff Bros., Inc.

Argued November 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Frederick J. Fiechter, Jr.,* for appellant.

*John G. Kaufman,* with him *Bean, DeAngelis, Kaufman & Kane,* for appellees.

OPINION BY MR. JUSTICE NIX, October 16, 1974:

The corporate appellee, Bearoff Brothers, Inc., was incorporated on April 1, 1953. From September 29, 1956 until June 30, 1959, all of the company's authorized and issued stock was owned by Frank Bearoff, now deceased, who was the father of the instant appellant and of the individual appellee. In June of 1959, the deceased executed share Certificate No. 5 for 2,450 shares of stock of Bearoff Brothers, Inc. in the name of appellant. A certificate for the same number of shares was at that time also executed in favor of Charles Bearoff, and both certificates were left by the father in the Share Certificate Book in the safe in the company office to which all three had access.

Subsequently, appellant gained possession of the certificate executed in his favor under circumstances that are in dispute. In January of 1962, the father filed a complaint in equity in Montgomery County as of No. 62-170 seeking the return of the certificate which the complaint alleged was improperly taken by appellant. During the course of that action an Answer, New Matter, and a Reply to New Matter was filed raising the issue of the ownership of the shares and the

allegation of a gift. On or about August 13, 1964, appellant returned the certificate in question to his father without an endorsement. With the approval of appellant that action was marked "Settled, Discontinued and Ended."

The instant action in equity was commenced by appellant on December 22, 1971, against the Company and his brother, Charles (the father having died in the interim), demanding the return to appellant of the same said stock certificate. In an answer the appellee asserted by way of new matter the defense of "res judicata" and "laches." The Chancellor entered a decree nisi dismissing the complaint on the grounds of res judicata and after exceptions were filed and argued before a Court *en banc* a final decree affirming the Chancellor's finding was entered. Hence, this appeal pursuant to the Act of 1970, July 31, P. L. 673, §202(4), 17 P.S. §211.202(4).

This court announced the perimeter of the doctrine of res judicata in our decision in *Stevenson v. Silverman*, 417 Pa. 187, 190-191, 208 A.2d 786, 787-788 (1965), cert. denied, 382 U.S. 833 (1965) : "For the doctrine of res judicata to prevail, there must be a concurrence of four conditions: (1) Identity in the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued: Burke v. Pittsburgh Limestone Corporation, 375 Pa. 390, 100 A.2d 595 (1953), and Fisher Building Permit Case, 355 Pa. 364, 49 A.2d 626 (1946). . . . A final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or *their privies* on the same cause of action: Goldstein v. Ahrens, 379 Pa. 330, 108 A.2d 693 (1954) ; Burke v. Pittsburgh Limestone Corporation, supra; Loughran v. Matylewicz, 367 Pa. 593, 81 A.2d 879 (1951) ; and Central Pa. Lumber Co. v. Carter, 348 Pa.

429, 35 A.2d 282 (1944). As stated in Goldstein v. Ahrens, 379 Pa. at 334, 108 A.2d at 695: 'When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered and not reversed on appeal is, as between the parties to the suit *and their privies,* final and conclusive with regard to every fact which might properly be considered in reaching a judicial determination and with regard to all points of law adjudged as those facts and points of law relate directly to the cause of action in litigation.' " (Emphasis in original.)

In *Helmig v. Rockwell Manufacturing Company,* 389 Pa. 21, 131 A.2d 622 (1957), cert. denied, 355 U.S. 832, quoting from our opinion in *Wallace's Estate,* 316 Pa. 148, 153, 174 A. 397 (1934), we stated: "Broadly stated, the rule of res judicata is that *when a court of competent jurisdiction has determined a litigated case on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies,* in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court. . . ."

Applying these general principles to the instant facts the obvious question as to the applicability of the doctrine arises from the absence of a valid judgment upon the merits by a court of competent jurisdiction. The fundamental principle upon which the doctrine is based is that a court judgment should be conclusive as between the parties and their privies in respect to every fact which could properly have been considered in reaching the determination and in respect to all points of law relating directly to the cause of action and affecting the subject matter before the court. We

are satisfied that the instant factual situation presents an identity of parties, subject matter and cause of action as required by the doctrine. However, the troublesome issue presented is whether the fact that a party in a prior litigation elected not to pursue his position to final judgment but rather chose, in absence of an agreement, to abandon his position, is thereby foreclosed from again asserting that position. While the general rule for either collateral estoppel or res judicata to apply is that a final and valid judgment must have been entered, *Philadelphia Marine Trade Association v. International Longshoremen's Association et al.*, 453 Pa. 43, 308 A.2d 98 (1973), this rule is not without exception. *Kannel v. Kennedy*, 94 F.2d 487 (1937).

In support of their position that the facts of the case under consideration fall within one of the exceptions to the general rule, both appellee and the court below rely heavily upon our decision in *Sustrik v. Jones & Laughlin Steel Corporation*, 413 Pa. 324, 197 A.2d 44 (1964). In our judgment their reliance was misplaced. In *Sustrik*, after several days of trial the matter was settled and discontinued by agreement of the parties and approval of the court, conditioned upon the payment of a stipulated sum of money from the defendant to the plaintiff. This Court held that a subsequent action brought to relitigate the same issues was barred as between the parties and that the settlement and discontinuance had the same effect as the entry of judgment for the defendant in the proceedings. The obvious distinction between the facts of the *Sustrik* case, *supra,* and the case at bar is that in the former there was court approval where as here the court did not participate in any way in the discontinuance of the earlier proceeding.[1] The doctrine of res judicata

---

[1] In *Sustrik, supra,* not only was there a court approval of the settlement but also the court subsequently refused plaintiff's at-

has been designed to preserve the conclusiveness of final court action. Thus we have said: "Although a consent decree is not a legal determination by the court of the matters in controversy . . . it binds the parties with the same force and effect as if a final decree has been rendered after a full hearing upon the merits. . . . The fact that without the consent of the parties the court might not have rendered the judgment does not affect its effect as res judicata. . . ." *Zampetti v. Cavanaugh,* 406 Pa. 259, 265, 176 A.2d 906, 909 (1962). See also *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.,* 456 Pa. 436, 318 A.2d 918 (1974). We have long recognized in this Commonwealth the benefit to the general welfare of preserving the finality of judicial action, *Hochman v. Mortgage Finance Corporation,* 289 Pa. 260, 137 A. 252 (1927), and for this reason we have rejected a narrow view of the doctrine of res judicata, embraced in some jurisdictions[2] and have resisted restriction in its application by technical requirements. *Hochman v. Mortgage Finance Corporation, supra.* However, to extend the doctrine to situations where there has been no court action, would result in a total distortion of the purposes of the doctrine in the first instance. Where, as here, there was no former adjudication (using the phrase in its broadest meaning) the defense of res judicata is not applicable.[3]

---

tempt to disaffirm the agreement and reopen the litigation. That ruling was affirmed by the Superior Court. *Sustrik v. Jones & Laughlin Steel Corporation,* 189 Pa. Superior Ct. 47, 149 A.2d 498 (1959).

[2] A number of jurisdictions have held that a judgment or decree by consent or as the result of compromise is not res judicata. 50 C.J.S., Judgments, §630, p. 55.

[3] "Appellant's argument is that the entry on the record indicates a settlement forever ending the cause of action on that or

The appellee argues in the alternative that the result reached below may be supported upon a theory of laches. We have often stated that where a court makes a correct ruling, order, decision, judgment or decree, but assigns an erroneous reason for its action, an Appellate Court will affirm the action of the court below and assign the proper reason therefor. *Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 268, 228 A.2d 768, 769 (1967); *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955) (and cases cited therein). This approach, however, is only appropriate where the correct basis for the ruling, order, decision, judgment or decree is clear upon the record. However, where disputed facts must be resolved appellate courts should refrain from assuming the role of a fact-finder in an attempt to sustain the action of the court below. Here, although the issue of laches was raised in the pleading, the Chancellor failed to make any findings of fact necessary to a determination of the issue. We are therefore not now in a position to find laches as a basis for supporting the decree of the court below.

Lastly, although not raised by the parties or the court below, we are not unmindful that the doctrine of equitable estoppel may be applicable as a result of appellant's actions in the prior proceeding,[4] but here again the record is inclusive.

---

any other suit, and that it cannot be attacked in another proceeding. No judicial approval of the settlement is indicated. A discontinuance itself is not a bar to a subsequent suit." (Citations omitted.) *Sale v. Ambler*, 335 Pa. 165, 168, 6 A.2d 519, 520 (1939). While a pending legal claim may be compromised and settled by a valid contract of settlement and in such an event the right of action is merged in the agreement of settlement, *Sale v. Ambler*, *supra*, such is not the contention here.

[4] "Equitable 'estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and

The decree of the court below is reversed, the complaint reinstated, and the cause is to proceed in accordance with this opinion. Each party to pay own costs.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice JONES and Mr. Justice ROBERTS dissent.

---

acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In this situation, the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements': [citing authorities].

"The following principles must be considered in applying the doctrine of equitable estoppel: '. . . in the absence of expressly proved fraud, there can be no estoppel based on the acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites.' [Citing an authority.] 'There can be no equitable estoppel where the complainant's act appears to be rather the result of his own will or judgment than the product of what defendant did or represented. The act must be induced by, and be the immediate or proximate result of, the conduct or representation, which must be such as the party claiming the estoppel had a right to rely on. The representation or conduct must of itself have been sufficient to warrant the action of the party claiming the estoppel. If notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely on them also to sustain the course of action adopted, he cannot claim that the conduct of the other party was the cause of his action and no estoppel will arise.' [Citing an authority.] 'Where there is no concealment, misrepresentation, or other inequitable conduct by the other party, a party may not properly claim that an estoppel arises in his favor from his own omission or mistake.': [citing authority]. 'Estoppel cannot be predicated on errors of judgment by person asking its benefit.': [citing authorities]." *Tallarico Estate*, 425 Pa. 280, 288-89, 228 A.2d 736 (1967) ; *Sunseri v. Sunseri et al.*, 358 Pa. 1, 55 A.2d 370 (1947). See also *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 27 A.2d 20 (1942) ; *Commonwealth v. Moltz*, 10 Pa. 527, 51 AD 499 (1849).