J-A18011-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: TRUST UNDER DEED OF TRUST OF SARAH MELLON SCAIFE, SETTLOR, DECEMBER 30, 1935 | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H. YALE GUTNICK, ESQUIRE, AND NON-PARTY STRASSBURGER MCKENNA GUTNIK & GEFSKY | : : : : | No. 1415 WDA 2018 |

Appeal from the Order Dated September 17, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): No. 6469 of 2014

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 31, 2019

H. Yale Gutnick, Esquire, ("Gutnick") and non-party Strassburger McKenna Gutnick & Gefsky ("Law Firm") appeal from the September 17, 2018 order directing them to produce documents identified in a privilege log as subject to the attorney-client privilege and work product doctrine. We have jurisdiction to entertain this appeal pursuant to the collateral order doctrine. Pa.R.A.P. 313.[1] For the reasons that follow, we vacate the order and remand for in camera review.

_____

[1] A non-final discovery order can be subject to appellate review under the collateral order doctrine if a colorable claim of the attorney-client privilege is raised. See Custom Designs & Mfg. Co. v. Sherwin-Williams Co., 39 A.3d 372, 376 (Pa.Super. 2012). In opining that the instant appeal should be quashed, the orphans' court relied upon our decision in Estate of McAleer, 194 A.3d 587, 595 (Pa.Super. 2018), appeal granted, 201 A.3d 724 (Pa. 2019), in which the issue in controversy was the reasonableness of trustee

The following facts are relevant to our review. In 1935, Sarah Mellon Scaife settled a trust she designated as the "Richard Mellon Scaife Trust" (the "Trust") "for the benefit of my son, RICHARD MELLON SCAIFE." Deed of Trust, at 4 ¶2. The Trust document conferred upon the Trustees the power and authority:

> whenever and as often as they shall deem that the best interests of my said son shall require or make advisable further or additional provision to be made for him,
>
> . . . .
>
> (c) To distribute to my said son, as his absolute property, all or such portion of the corpus of the Trust Estate as the Trustees shall deem to be for his best interests, and if, as and when the entire corpus of the Trust Estate may be so distributed to my said son, this trust shall terminate notwithstanding that the time of termination specified in Article 3 may not yet have arrived.

Id. at 9 ¶8.

The Trust instrument expressly defined the discretion of the Trustees as follows:

> That power given to the Trustees regarding distribution of income and/or corpus of the Trust Estate, shall be exercisable by them in their absolute and uncontrolled discretion, and I expressly direct

_____

and attorney fees. After concluding that trust beneficiaries had a right to such information, and that the trustee had not objected to the discovery on the basis of privilege, nor provided any facts in support of his attempt to invoke the attorney-client and work product privileges, we found no colorable claim of privilege that would render the non-final discovery order appealable as a collateral order. In contrast herein, Gutnick and the Law Firm objected on the basis of privilege, supplied detailed privilege logs, and thus raised a colorable claim of privilege that supports appellate review of the instant non-final discovery order under the collateral order doctrine.

that the Trustees shall be the sole judges as to the necessity, advisability, propriety and amount of any such distribution . . . final and conclusive . . . binding upon all parties having any interest in the corpus of income of the Trust Estate, and shall not be open or subject to question in any manner or for any reason whatsoever.

Id. at 16 ¶11.

From 1996 through 2014, Mr. Scaife made requests for distributions from the Trust until the $400 million principal was fully distributed. Trustees Gutnick, PNC Bank, N.A. ("PNC"), and James M. Walton sought legal advice over the years from three attorneys regarding their discretion to make distribution of the Trust principal.

Richard Scaife died on July 4, 2014. Gutnick and Walton were appointed co-executors of Mr. Scaife's estate. Mr. Scaife's two children, Jennie[2] and David (collectively "Petitioners"), were contingent remainder beneficiaries under the Trust. They each filed Petitions for Citation to Show Cause Why an Account Should Not be Filed. Thereafter, they filed Objections to the Trustees' Account, incorporating their prior petitions, averring that distributions from the Trust to Mr. Scaife were improper. They alleged that the Trustees wasted Trust assets, that funding Tribune Total Media's losses was not in Mr. Scaife's best interests, and that Mr. Scaife's requested distributions were intended to effectuate his estate plan to disinherit his children, Petitioners herein. Advanced Text of Brief of Appellee David Zywiec, at 3. The Trustees responded that they acted in good faith and in accordance with the law,

---

[2] Jennie Scaife died on November 29, 2018. Her personal representative, David Zywiec, has been substituted for her in these proceedings.

- 3 -

pursuant to the Settlor's directives as set forth in the Deed of Trust, and in reliance upon the opinion of several counsel.

Discovery proceeded. Petitioners served a request for production upon Gutnick seeking all documents that referred to administration of the Trust, communications with attorneys or accountants with regard to the Trust, and Gutnick's entire file on the Trust. Gutnick agreed to provide non-privileged documents in his custody and control responsive to the request.[3]

Shortly thereafter, Petitioners subpoenaed the Law Firm to produce documents not only related to the Trust, but to other family trusts, and Mr. Scaife's estate plan as well. The Law Firm objected to the subpoena, but agreed to produce documents that were not privileged pursuant to the attorney-client privilege, the work product doctrine, or any other privilege or immunity. Over 39,000 pages of documents were produced in response to the subpoena. On November 2, 2016, Gutnick and Law Firm submitted the Law Firm Privilege Log, accounting for documents responsive to the requests but which were being withheld on the basis of privilege.

_____

[3] According to co-trustee PNC, prior to the production of any documents, the parties entered a consent order, approved by the court, that provided that Trustees would include documents "reflecting requests for legal advice and opinions of counsel paid for by the 1935 Trust or the Family Trusts." Consent Order, 9/15/15, at 1 ¶2. PNC states that the Trustees complied with the consent order and did not produce any documents related to legal advice and work product that was not paid for by the Trust and that were not shared among the Trustees. See Advanced Text of Brief of Appellee PNC Bank, NA, at 7.

In December 2017, Petitioners filed a motion seeking to compel the production of attorney-client and work product privileged documents regarding Mr. Scaife's estate planning file, or alternatively, seeking that the documents be subjected to in camera review.[4] The Law Firm and Gutnick provided a supplemental privilege log, and consented to in camera review. They also stated they were amenable to appointment of a special discovery master for purposes of resolving the issues attendant to the requested documents. The orphans' court heard oral argument on the motion to compel on January 12, 2018, but reserved decision pending this Court's decision in Estate of McAleer, 194 A.3d 587, 595 (Pa.Super. 2018), appeal granted, 201 A.3d 724 (Pa. 2019). Six weeks after our decision, in September 2018, the orphans' court granted Petitioners' motion to compel and ordered production of all of the documents subject to claims of privilege without conducting in camera review. In doing so, the court relied upon Judge R. Stanton Wettick's decision in Follansbee v. Gerlach, 56 Pa. D & C 4th 483 (Alleg. Co. 2002), holding that legal advice given to the trustee relating to the

_____

[4] Gutnick and the Law Firm maintained throughout that Mr. Scaife's estate planning had no bearing on the question whether they breached a fiduciary duty in their administration and management of the Trust. Moreover, Gutnick and the Law Firm argued that there was no reason to delve into Mr. Scaife's estate planning documents to prove, as Petitioners contended, that Gutnick knew Mr. Scaife intended to disinherit his children. As Gutnick aptly notes, he admitted that Mr. Scaife had several motives for requesting principal distributions, among them, that his children had sufficient wealth that they did not need any more money from the Trust. Answer and New Matter of Respondent, H. Yale Gutnick, to Jennie Scaife's Petition for Citation to Compel Recording of Trust Agreement and Filing of an Account, 12/12/14, at ¶32.

trust must be shared with trust beneficiaries, and cannot be withheld by invoking attorney-client privilege.

Gutnick and the Law Firm clarified that the documents that the court had ordered them to produce involved estate planning, not trust management, and were not governed by Follansbee. In response, the orphans' court added an additional basis for compelling production: that Gutnick and the Law Firm waived their privilege claims by failing to assert them in their response to the motion to compel. It also relied upon In re Estate of McAleer, supra, for the proposition that its order was not appealable.

Gutnick and the Law Firm filed the within appeal, basing appellate jurisdiction to review the interlocutory order on the collateral order doctrine. They present three issues for our review:

I.   Whether the lower court erred in holding that Appellants waived their attorney-client and work product objections to producing Richard Scaife's estate planning file?

II.  Whether the lower court erred in holding that the Follansbee decision, which involved trust administration documents, even applied to the production of estate planning documents?

III. Whether the lower court erred in ordering the production of Mr. Scaife's entire estate planning filed without conducting an in camera review as to which Appellants raised claims of privilege?

Appellants' brief at 8 (unnecessary capitalization omitted).

Before we address the issues raised by Gutnick and Law Firm, we must first address David's argument that the instant appeal should be quashed for

- 6 -

lack of jurisdiction.[5]  While David concedes that discovery orders compelling the disclosure of allegedly privileged communications may be appealable as collateral orders pursuant to Pa.R.A.P. 313, he claims that Gutnick and the Law Firm are not aggrieved parties, i.e., parties who are adversely affected by the ruling, with standing to appeal from the order.  He contends that Gutnick and the Law Firm are not aggrieved by an order compelling them to produce estate planning, tax, and corporate documents containing advice given by a non-party, Attorney Allan Finegold, for the benefit of Mr. Scaife.

Gutnick and the Law Firm counter that David's argument improperly conflates standing to appeal an adverse order, and standing to invoke a privilege, which were held by this Court to be distinct inquiries in Knopick v. Boyle, 189 A.3d 432, 437 (Pa.Super. 2018) (holding that appellant who had asserted privilege as to an email had standing to seek review of the court's order compelling him to disclose the email).

We find no merit in David's argument.  As Knopick demonstrates, a party is aggrieved within the meaning of Pa.R.A.P. 501, when an order requires him to produce and disclose allegedly privileged materials.  The order directing Gutnick and the Law Firm to produce documents claimed to be

---

[5]  David and Jennie are separately represented and they filed separate briefs. When an argument is advanced only by one of the Petitioners, we will note which Petitioner.  Where the argument is advanced by both Petitioners, we will simply ascribe the argument to Petitioners.

privileged rendered them aggrieved for purposes of contesting the order on appeal, and quashal on this ground is unwarranted.

David offers a second basis for quashal of the appeal. He contends that the privilege belongs to Mr. Scaife's executors to assert. Although Gutnick is a co-executor, David maintains that Gutnick did not appeal in his capacity as executor, and further, that he could not appeal unilaterally without co-executor James Walton. He cites no authority in support of his position.

David's argument lacks merit for several reasons. As Gutnick and the Law Firm point out, David did not challenge below the standing of these parties to assert the attorney-client and work product privileges. Thus, that issue is not before us.[6] Furthermore, for the reasons stated supra, standing to invoke a privilege and standing to appeal are distinct, and lack of standing to assert a privilege does not mandate quashal of an appeal from an order compelling disclosure of allegedly privileged documents.[7]

_____

[6] Even if the issue were preserved, the courts of this Commonwealth have been willing to overlook the capacity in which a party purports to proceed where he has standing to do so in some other capacity. See e.g., In re Estate of Hain, 346 A.2d 774 (Pa. 1975) (holding that a party who erroneously challenged an order as executor, but could have proceeded in some other capacity, was entitled to the benefit of having appealed in the proper capacity); In re Estate of Blumenthal, 812 A.2d 1279 n.1 (Pa.Super. 2002) (holding that while co-executors did not have standing to file exceptions in that capacity, the error was not fatal as they had standing to take such action in their individual capacities as beneficiaries).

[7] In support of their contention that they have standing to assert the privileges, Gutnick and the Law Firm maintain that they are duty-bound to

We turn now to the merits. We are reviewing an order from the orphan's court.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

> When the trial court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous. . . . If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

_____

assert privileges on behalf of their clients. Furthermore, with regard to some of the withheld estate planning communications between Attorney Finegold and the Law Firm, the Law Firm maintains that it was the client entitled to assert the privilege.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa.Super. 2010) (internal citation omitted).

At issue herein is whether there has been a breach of fiduciary duty by the Trustees to the Trust. "A trust is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person[.]" *Id.* at 573. Generally, "[t]he trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." *Id.* The trustee is prohibited from dealing with trust property for the benefit of himself or third parties, or placing himself in a position inconsistent with the interests of the trust. *In re Paxson Trust*, 893 A.2d 99, 119 (Pa.Super. 2006); see also Duties of the Trustee, Restatement (Second) of Trusts (1959), §§ 169-185.

With the foregoing principles in mind, we turn to Gutnick and the Law Firm's first issue: that the orphans' court erred in holding that they waived their attorney-client and work product objections to producing Richard Scaife's estate planning file by failing to assert the privileges in response to Petitioners' motion to compel. Petitioners candidly concede, and the record confirms, that Gutnick and the Law Firm did in fact invoke the attorney-client and work product privileges in their response to the motion to compel. Thus, this basis relied upon by the orphans' court for compelling production of the documents subject to assertion of privilege is infirm, and Gutnick and the Law Firm's first issue is meritorious.

Similarly, Gutnick and the Law Firm's second issue provides a basis for relief. The parties do not disagree that the orphans' court erroneously relied upon Follansbee in ordering disclosure of estate planning documents, although that decision involved trust documents only, and does not speak to the discovery of or duty to disclose estate planning documents. We agree that Follansbee, while germane with regard to the Trust management documents, is not controlling with regard to estate planning documents, and was incorrectly relied upon by the orphans' court in compelling production herein.

Nonetheless, Petitioners assert a plethora of alternative bases on which to affirm the order of the orphans' court, and urge this Court to avail itself of the right-for-any-reason doctrine. See Commonwealth v. Shaffer, 209 A.3d 957, 980-81 (Pa. 2019) (concurring and dissenting opinion, Wecht, J.) (quoting In re A.J.R.-H., 188 A.3d 1157, 1175-76 (Pa. 2018) ("The 'right-for-any-reason' doctrine permits an appellate court to affirm the trial court's decision on any basis that is supported by the record."). Gutnick and the Law Firm caution that the doctrine can only be employed "where the correct basis for the ruling, order, decision, judgment or decree is clear upon the record." Reply Brief for Appellants at 8 (quoting Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 76 (Pa. 1974)). It cannot, they argue, "be used to affirm a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determinations to reach a legal conclusion." Id. (quoting In re A.J.R.-H, supra at 1176). Gutnick and the Law Firm maintain that

- 11 -

Petitioners are asking this Court to engage in impermissible fact finding with regard to documents that are not in the record. Id.

In his concurring and dissenting opinion in Shaffer, supra, Justice Wecht explained that the rationale for the right-for-any-reason doctrine is that we review the judgment or order of the trial court, rather than any the particular rationale offered by that court. Id. at 980 (citing Ario v. Ingram Micro, Inc., 965 A.2d 1194, 1200 (Pa. 2009)). Accordingly, our courts have acknowledged that it would be a waste of judicial resources to remand a case to the trial court merely to reinstate a decision it had already made, but on a different basis within the power of an appellate court to effectuate. However, the doctrine cannot be used to affirm "a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determinations to reach a legal conclusion." Id. at 981 (quoting In re A.J.R.-H., supra at 1176). Moreover, appellate courts are not bound to utilize the doctrine as it is "discretionary and prudential." Id.

We observe the following. Although this action involves the administration of the Trust, the subpoenaed documents pertain not to the Trust, but to Mr. Scaife's estate planning, and involve allegedly privileged communications related thereto. Nonetheless, Petitioners advance numerous arguments as to why this Court should affirm the court's order compelling disclosure of allegedly privileged estate planning documents, none of which was fully explored below. They argue that Gutnick and the Law Firm waived

any claims of privilege as to any documents, even estate planning documents, by relying on the advice of counsel defense with regard to their administration of the Trust. Alternatively, they allege that Gutnick and the Law Firm waived any claim of privilege by asserting it selectively. Furthermore, Petitioners assert that since Gutnick represented both the Trust and Scaife, individually, and worked with the Law Firm and Attorney Finegold on estate planning, Gutnick cannot assert attorney-client privilege with respect to estate planning documents. Finally, Petitioners allege that Gutnick and the Law Firm never asked for in camera review, and that the failure to do so constitutes waiver of such relief.

Gutnick and the Law Firm counter that they only relied upon the advice of counsel defense with regard to their distributions of the Trust principal, and did not rely upon the estate planning advice of Attorney Finegold in that regard. Consistent with that position, they produced documents related to legal advice they received in conjunction with the Trust. For example, Gutnick and Law Firm produced notes of a meeting with Attorney Finegold and Gutnick in April 2005, at which they discussed the consequences of terminating the Trust, and for which PNC was billed for legal work related to the Trust. The second document in controversy, an exit memorandum from Attorney Avalli to Gutnick, dated February 27, 1997, when he resigned from the Law Firm, also addressed the Trust. According to Gutnick and the Law Firm, production of discoverable attorney-client communications involving the Trust was

properly discoverable under the rationale espoused in Follansbee, supra, and did not constitute a blanket waiver of attorney-client privilege.

Whether the disclosure of the aforementioned documents constituted the selective assertion of attorney-client privilege is a fact-intensive inquiry. As Gutnick and the Law Firm correctly note, such waiver is issue-specific, and its scope can only be determined with reference to the documents claimed to be privileged. See Gregury v. Greguras, 196 A.3d 619, 629 (Pa.Super. 2018) (en banc) (holding that claims of selective waiver, "if valid, may result in waiver of the privilege with respect to other evidence regarding the same subject matter"). The focus is on prejudice to the opposing party. Herein, the relevant documents are not contained in the certified record, and the record is not sufficiently developed for us to make such a determination.

Petitioners assert, without support, that no colorable claim of privilege can be maintained because Gutnick and the Law Firm concurrently represented Mr. Scaife in estate planning and with regard to the Trust, which was a conflict of interest. Gutnick and the Law Firm contend that the roles were different and not conflicting or inconsistent. Reply brief of Appellants at 16. Furthermore, they rely upon Gocial v. Independence Blue Cross, 827 A.2d 1216, 1222 (Pa.Super. 2003), for the proposition that even a demonstrated conflict of interest does not result in a blanket waiver of privilege. We find the record insufficient to make any such determination.

Next, Petitioners claim that Gutnick and the Law Firm bore the burden of proving the applicability of the privileges. They argue that the attorney-client privilege does not extend to communications that were not intended to be confidential, and will not protect communications between the attorney and the client if the communication took place in the presence of a third party, if the attorney represents both parties to the transaction or dispute, or if the attorney is defending his former client's attacks on his professional competence. See Definitive Brief of Appellee David Zywiec, at 13 (citing Upjohn Co. v. United States, 449 U.S. 383, 369-97 (1981) (recognizing that scope of attorney-client privilege is fact-sensitive). Similarly, work product protection can be waived either by agreement, prior disclosure, or where such communications are relevant to a claim or defense, such as the advice of counsel defense. Id.

Although Petitioners correctly point out some of the limitations on the attorney-client and work product privileges, whether there are circumstances that negate the claim of privilege in this case is a fact-intensive inquiry. That is precisely why courts often require parties asserting privilege to prepare a privilege log identifying the documents at issue and proffering why they are privileged. At that point, the burden shifts to the party seeking disclosure to demonstrate that the privilege has been waived or is subject to an exception. See Yocabet v. UPMC Presbyterian, 119 A.3d 1012, 1019 (Pa.Super. 2015) (finding that since board meeting may have been called to seek legal advice

from the lawyers present, it was improper to reject outright the privilege without examination of the factual basis for application of the privilege). In camera review is a valuable tool for determining the validity of privilege claims, and in many instances, it is difficult to make an informed decision regarding privilege without such an inspection. See Berg v. Nationwide Mutual Ins. Co., 44 A.3d 1164, 1179 (Pa.Super. 2012).

The legal bases urged by Petitioners for affirming the order of the orphans' court lack the factual underpinnings to permit this Court to make decisions regarding the validity of the attorney-client and work product privilege claims. Furthermore, the documents subject to the claims of privilege are not contained in the certified record. Moreover, it is not the role of this Court to conduct in camera examinations of hundreds or thousands of documents in the first instance.

Finally, we reject Petitioners' claim that Gutnick and the Law Firm waived the right to seek in camera review. The record establishes that Petitioners suggested in camera review, and Gutnick and the Law Firm agreed. In fact, Gutnick and the Law Firm stated they were amenable to the appointment of a special discovery master to conduct such review, an option that remains available to the orphans' court upon remand.

For all of the foregoing reasons, we conclude that the orphans' court erred in ordering Gutnick and the Law Firm to provide to Petitioners all of the documents alleged to be privileged without first conducting in camera review

to determine the validity of the privilege claims. Since in camera review of the documents is warranted, we vacate the order of the orphans' court compelling Gutnick and the Law Firm to produce all documents claimed to be privileged, and remand to the orphans' court for such an examination.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2019